ALEXANDER JUSTER, Respondent, v. HARRY CHESSLER, Appellant.

First Department, April 13, 1928.

Master and servant — wrongful discharge — evidence fails to establish contract alleged by plaintiff — instructions by court were erroneous.

The plaintiff seeks to recover commissions under an alleged contract of employment, claiming that he was wrongfully discharged before the termination of the contract. The defendant denies that the contract was for any definite term or that the plaintiff was given exclusive sales rights within the territory claimed by him. Ordinarily, the issues presented would raise questions of

fact but in this case, all the documents, such as letters written by the plaintiff and accounts sent to him, and his own statements of the nature of the agreement, contradict his claim, and it is clear that he did not have an exclusive territory in which to sell defendant's goods. Therefore, the judgment in favor of the plaintiff is reversed.

Furthermore, the court erred in charging the jury that the plaintiff was entitled to recover commissions on certain items introduced as bills receipted by defendant for customers' orders procured by plaintiff, which were not included in the concession of his sales, for the court had stricken out the items and they were never reinstated.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 20th day of May, 1927.

*William Zuckerman* of counsel [*David H. Gladstone*, attorney], for the appellant.

*Norman L. Marks* of counsel [*Lind & Marks*, attorneys], for the respondent.

McAVOY, J. The complaint in this cause sets out the employment of plaintiff in May, 1924, by the defendant, such employment to continue until the end of that year. Plaintiff was to have supervision of and assist in connection with sales for the defendant in the eastern half of the State of Pennsylvania, and the whole of the States of New York, New Jersey, Maine, New Hampshire, Vermont, Massachusetts, Rhode Island and Connecticut. His compensation, it was promised by the defendant, was to be a sum equal to ten per cent on the amount of all orders received and accepted by the defendant from customers in these States during the time that plaintiff remained in the employ of the defendant. He was also to have expenses.

Thereafter it is alleged that the agreement was renewed for the year 1925. Further, it is alleged that late in February, 1926, the parties agreed that the plaintiff was to continue in defendant's employ under the same terms and conditions as the previous employment covered, except that he was to continue the employment until December 31, 1926. It is set out that he continued in this employment from May, 1924, until July 24, 1926, when he was discharged by the defendant without cause. Plaintiff proved that during this term of employment he sold goods in this territory, and orders were received and accepted by defendant from customers in the States mentioned, in the sum of upwards of $172,000. It is further alleged that during the period between the date of plaintiff's discharge and December 31, 1926, the defendant would sell goods in the period between plaintiff's discharge and the end of the term in this territory and orders would come in and be accepted from

customers of those States in the sum of upwards of $100,000. He claims thus to be entitled to ten per cent of $272,000, which amounts to over $27,000. He admits receiving on account of commissions $6,300, which leaves due $20,900.

The proof showed the employment in May, 1924, and a renewal in 1925, and rather vague proof of plaintiff's proposal to continue in 1926, under the terms previously conditioned.

That there was any term of employment was denied by the defendant and that there was any exclusive territory granted was also controverted, besides it was denied that there was a ten per cent arrangement for the payment of commissions on the sales of goods made in this territory. All of these issues would remain as questions of fact, which the jury was entitled to decide in favor of plaintiff as against defendant, except for the fact that nearly all the documents in the case, such as letters written by plaintiff himself, and accounts sent to him of his compensation and his own statement of the nature of the agreement entered into in February, 1926, which leaves a gap for the month of January and February of 1926, contradict his claim. For instance, with respect to his assertion that he had exclusive territory in eastern Pennsylvania and all New York, there are letters from him in which he requests permission to solicit orders in Scranton and Wilkesbarre. He explains these by saying that he wanted to be sure that he was entitled to go there under an exclusive contract for eastern Pennsylvania, but obviously these are so far in the east as not to cause any doubt in the mind of an aggressive salesman as to where he might go under his contract. He also is shown as indicating that he would not call on four or five houses in New York which dealt directly with the defendant, because defendant wished to deal directly with them. His conduct showed that he had no right to solicit orders from these customers and thus indicated a lack of exclusiveness in such territory.

As to his commissions being ten per cent, his own account sent him showed that he was on a sliding scale of five per cent, seven and one-half per cent and ten per cent, depending upon the prices he obtained for various lots of dolls from the customers. Finally as to the contract itself, his testimony as to the consummation thereof leaves doubt as to what was really promised either by plaintiff or defendant. The testimony runs: " Q. And didn't you then speak to him about a contract or some arrangements for the year 1926? A. Why, he wrote me that he would be glad to have me down. Q. I did not ask you that. When you were in his office didn't you speak to him about some arrangements for continuation of your employment. A. I tried to. Q. What did

you say to him?   A. I asked him, ' What about next year?   What do you want me to do?   What arrangements do you want to make with me? '   Q. And what did he say?   A. He said, ' There is no time for it now, but we will go over that thing together when I get to New York during the toy show.' "

At the end of the toy show the parties talked further about a definite contract.   The testimony is as follows: " Q. Well, when did you finally agree on a definite contract of employment?   A. Why, I believe the last day of the toy show, practically the very last day.   Q. When was that?   A. That must have been the very first week in March.   Q. 1926?   A. That is right.   The Court: 1926.   Q. 1926, that is right, March, 1926.   And what was that contract?   A. That contract was in the past on a strictly ten per cent commission on all business done in my territory. The Court: And do you mean March, 1926?   Mr. Marks: Yes, that is correct.   Q. So, according to your statement, there was nothing different, there was no different arrangements in your contract beginning with March, 1926, than had existed prior to that?   A. Well, the only thing that was definite is that I was supposed — The Court:   Different, he said, not definite.   The Witness: Different?   Q. Different arrangement?   A. Nothing different. Q. Same arrangement as before?   A. Same arrangement as before."

This might do as a prop upon which to hold the result if the other matters were not so contradictory of his claim.   In addition to these considerations which imperatively require reversal, the learned trial court charged the jury that plaintiff was entitled to recover commissions on certain items introduced as bills receipted by defendant for customers' orders procured by plaintiff which were not included in the concession of his sales.   The court had stricken out this item of bills and never reinstated it.   Nevertheless he charged on it as an item of recovery, and it was obviously prejudicial to have the jury charged on a matter claimed to have been suppressed from defendant's account of plaintiff's sales when the basis on which the learned court had stricken it out theretofore was that it already had been included in the original statement of the total sales.

The judgment should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.